UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| L & M CREATIONS, INC., ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:10-cv-00685-GMN-GWF |
| vs. ) | |
| ) | **ORDER** |
| CRC INFORMATION SYSTEMS, ) | |
| ) | |
| Defendant. ) | |

This case arises out of the sale of software and services. Pending before the Court is Defendant's Motion to Compel Arbitration (ECF No. 6) and Motion to Dismiss or Stay Proceedings (ECF No. 10). Both of these motions are fully-briefed. For the reasons that follow, the Court GRANTS Defendant's Motion to Dismiss or Stay Proceedings (ECF No. 10), finding that dismissal is appropriate, and also GRANTS the Motion to Compel Arbitration (ECF No. 6).

## I.  FACTS AND PROCEDURAL HISTORY

Plaintiff entered into a License and Support Agreement ("the Agreement") with Defendant wherein Defendant agreed to provide goods, software, and services ("the Software") to Plaintiff. (Compl. ¶ 7.) Plaintiff alleges that Defendant: (1) induced Plaintiff to purchase the Software by making false representations; (2) breached the Agreement by failing to provide the Software with the promised capabilities; and (3) breached the Agreement by failing to provide services as required by the Agreement. (*See id.* ¶¶ 9–10). The parties signed the Agreement in May 2007, (*see* ECF No. 6, Ex. 1, at 7), and it contains an arbitration clause ("the Arbitration Clause") within a paragraph entitled "Injunctive Relief; Arbitration," which provides:

/ / /

> Injunctive Relief; Arbitration.  Customer agrees that any breach involving CRC's Confidential Information or proprietary rights or the non-solicitation of employees will result in irreparable and continuing damage to CRC, for which there will be no adequate remedy at law, and in the event of such a breach, CRC will be entitled to injunctive relief and/or a decree of specific performance, and other such relief as may be appropriate.  Exclusive venue for any such action shall be in the state and federal courts located in Maricopa County, Arizona.  **Subject to the preceding two sentences, CRC and customer agree that all disputes arising under or in any way related to this Agreement, including but not limited to claims alleging fraud in the inducement and other claims of fraud or misrepresentation and disputes regarding the interpretation of the Agreement, shall be resolved exclusively by binding arbitration held in Phoenix, Arizona, Maricopa County, United States of America, in front of a single arbitrator, who shall be an Arizona licensed attorney with specific expertise in disputes involving computer software and software licensing, and familiarity generally with contract law and business disputes, under the then-prevailing Rules of the American Arbitration Association.  The award of the arbitrator shall be final, non-appealable and binding upon the parties, and judgment upon the award may be entered in any court having jurisdiction thereof.  This Agreement and performance hereunder will be construed according to the substantive laws of the State of Arizona, without regard to conflict of law principles.  The prevailing party in the arbitration proceeding will be entitled to recover its reasonable attorney's fees and costs incurred.**

(*Id.*, Ex. 1, at 5 ¶ 12) (emphasis added to highlight the relevant provisions).

On April 1, 2010, Plaintiff, a Nevada corporation, sued Defendant in the state court of Nevada alleging eight causes of action: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Unjust Enrichment; (4) Negligent Misrepresentation; (5) Breach of Express Warranty; (6) Breach of Implied Warranty of Merchantability; (7) Breach of Implied Warranty of Fitness for a Particular Purpose; and (8) Declaratory Relief.  The parties do not dispute that the Arbitration Clause, if enforceable,

applies to all of these claims, nor can they, as the Clause covers "all disputes arising under or in any way related to this Agreement" and each of Plaintiff's claims is in some way related to the underlying contract between the parties.

Defendant, a Michigan corporation with its principal place of business in Arizona, removed the lawsuit from Nevada state court to this U.S. District Court, in the District of Nevada pursuant to 28 U.S.C. § 1332 and has now moved to compel arbitration in Arizona and to dismiss or stay this lawsuit.

**II.     LEGAL STANDARDS**

Section 2 of Title 9 of the United States Code provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. This statute has been ruled constitutional as it applies to contracts in interstate commerce and admiralty. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404–05 (1967). A federal court may adjudicate claims related to the enforceability of an arbitration clause, but once it is satisfied that the arbitration clause itself is valid and that the dispute between the parties is covered by the arbitration clause, the court must compel arbitration:

> Under s 4, with respect to a matter within the jurisdiction of the federal courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue.' Accordingly, if the claim is fraud in the inducement of the

>arbitration clause itself--an issue which goes to the 'making' of the agreement to arbitrate--the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

*Id.* at 403–04 (citing 9 U.S.C. § 4) (footnotes omitted).

In 1991, the Ninth Circuit limited the *Prima Paint* doctrine "to challenges seeking to *avoid* or *rescind* a contract--not to challenges going to the very existence of a contract that a party claims never to have agreed to." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1140 (9th Cir. 1991). In other words, for a time in the Ninth Circuit, an arbitration clause was not binding by showing that the contract never existed and was *void* as a whole (e.g., for forgery, lack of agency, or fraud in the factum), whereas a contract that was merely *voidable* (e.g., for infancy, fraud in the inducement, mistake, duress, or breach of warranty) had to be attacked based on the voidability of the arbitration clause itself, if a party wished to avoid arbitration. *See id.*

But, in 2006, the Supreme Court rejected "the distinction between void and voidable contracts" as irrelevant. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006). The Supreme Court specifically rejected the argument that a court must first determine whether any contract exists, and that to do this it must examine whether the purported contract is void *ab initio* under state law. *Id.* at 447–48. The Court held that "contract" as used in 9 U.S.C. § 2 "must include contracts that later prove to be void" or "putative contracts." *Id.* at 448. Thus, "regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Id.* at 449. The Supreme Court reaffirmed that rule in *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772 (2010).

### III.   ANALYSIS

Plaintiff's Complaint contains no claim that Defendant fraudulently induced Plaintiff to

enter into the arbitration clause, nor does it attack the validity of the arbitration clause in any way.  In fact, Plaintiff asks the Court to declare that all of the agreements between it and Defendant are enforceable, alleging: "[p]ursuant to NRS 30.040 Plaintiff is entitled to declaratory relief as to the validity of the agreements in question and a declaration that the agreements are enforceable as is hereinafter requested." (*See* Compl. ¶ 71.)

However, in Plaintiff's Response to the Motion to Dismiss and the Motion to Compel Arbitration (ECF No. 8), Plaintiff attacks, as unconscionable, the arbitration clause itself. Because it is the party resisting arbitration, Plaintiff has the burden of proving that the arbitration agreement is unenforceable. *See Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 91–92 (2000).

### A.   Choice of Law

Whether an arbitration agreement is valid is governed by state law. *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1219 (9th Cir. 2008) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681 (1996) (holding that state law governing the validity, revocability, and enforceability of contracts generally may be used to attack an arbitration clause, but state laws directed at arbitration clauses in particular are preempted by the Federal Arbitration Act)).  A federal court sitting in diversity applies the forum state's choice of law rules. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010). Therefore, Nevada's choice of law rules apply to the present case.

Defendant contends that the sentence in the Arbitration clause that states "[t]his Agreement and performance hereunder will be construed according to the substantive laws of the State of Arizona, without regard to conflict of law principles" is a valid choice-of-law clause, which dictates that the Court must apply the law of Arizona to determine whether the Arbitration clause is unenforceable. (Reply 7:1–5, ECF No. 11.)  However, given the context of this sentence, it very clearly applies to the choice of law to be used during arbitration, but

does not appear to pertain to analysis of the contract in other settings.  The alleged choice-of-law clause is listed among the conditions of the arbitration proceedings and appears to be setting forth the choice of law the arbitrator must apply, not the choice of law that must be applied in other contexts, such as determining whether this Arbitration clause is enforceable:

> <u>Injunctive Relief; Arbitration.</u>  Customer agrees that any breach involving CRC's Confidential Information or proprietary rights or the non-solicitation of employees will result in irreparable and continuing damage to CRC, for which there will be no adequate remedy at law, and in the event of such a breach, CRC will be entitled to injunctive relief and/or a decree of specific performance, and other such relief as may be appropriate. Exclusive venue for any such action shall be in the state and federal courts located in Maricopa County, Arizona.  Subject to the preceding two sentences, CRC and customer agree that all disputes arising under or in any way related to this Agreement, including but not limited to claims alleging fraud in the inducement and other claims of fraud or misrepresentation and disputes regarding the interpretation of the Agreement, shall be resolved exclusively by binding arbitration held in Phoenix, Arizona, Maricopa County, United States of America, in front of a single arbitrator, who shall be an Arizona licensed attorney with specific expertise in disputes involving computer software and software licensing, and familiarity generally with contract law and business disputes, under the then-prevailing Rules of the American Arbitration Association.  The award of the arbitrator shall be final, non-appealable and binding upon the parties, and judgment upon the award may be entered in any court having jurisdiction thereof.  **This Agreement and performance hereunder will be construed according to the substantive laws of the State of Arizona, without regard to conflict of law principles.**  The prevailing party in the arbitration proceeding will be entitled to recover its reasonable attorney's fees and costs incurred.

(Mot., Ex. 1, at 5 ¶ 12, ECF No. 10) (emphasis added).  Because the alleged choice-of-law clause does not, on its face, apply to any proceeding outside of arbitration, the clause will not be used to determine which state's laws govern the Court's inquiry into the enforceability of the Arbitration clause.

In the absence of an effective choice-of-law provision in the contract, Nevada courts apply a five-factor significant relationship test to determine which state has the most significant relationship to the contract. *Consolidated Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1253–54 (Nev. 1998). The factors courts examine are: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id.*

Unfortunately, the parties did not fully brief all of these elements, and the Court is reluctant to rely on Plaintiff's conclusory assertion that "[a]ll of the transaction elements took place in Nevada," (Resp. 3:15–16, ECF No. 8), without a more thorough articulation of the facts. A few things are certain, however. Plaintiff, a corporation with its principal place of business in Nevada, entered into a contract with Defendant, a corporation with its principal place of business in Arizona. Defendant's employee who negotiated with Plaintiff lives in Arizona and commuted to Nevada for sales calls with Plaintiff. (Reply 7:7-8, ECF No. 11.) Thus, it is likely that the contract at issue was actually signed in Nevada on one of those sales calls. The contract could, however, have been negotiated over the phone by Defendant's employee while he was in Arizona and Plaintiff's representative was in Nevada. Further, it is known that Defendant created the software for Plaintiff in Arizona and then sent it to Nevada, (Reply 7:9, ECF No. 11), where it likely--though not certainly--still resides. Also, Defendant provided Plaintiff's employees with training concerning the software in both Nevada and Arizona. (Reply 7:10, ECF No. 11.) This combination of facts tends to suggest that Nevada had only a slightly more significant relationship to the contract than Arizona, but, in light of the insufficiency of evidence before the Court, the Court will refrain from making a final finding in this regard at this time. The parties need not brief the issue, however, as the result is the same whether the Court applies Nevada law--as Plaintiff would like--or Arizona law—as

Defendant requests.

B.  **Nevada Law**

In Nevada, "strong public policy favors arbitration because arbitration generally avoids the higher costs and longer time periods associated with traditional litigation," and arbitration clauses are generally enforceable. *D.R. Horton, Inc. v. Green,* 96 P.3d 1159, 1162 (Nev. 2004). Arbitration clauses are enforced, however, only after an enforceable agreement to arbitrate is found to exist. *Gonski v. Second Judicial District Court of State ex rel. Washoe*, 245 P.3d 1164, 1169 (Nev. 2010). Although the party seeking to enforce an arbitration clause bears the burden of proving the clause's valid existence, any party opposing arbitration must establish a defense to enforcement. *Id.*

Here, Plaintiff asserts that the Arbitration Clause is unconscionable under Nevada law and, therefore, unenforceable. In reviewing a provision's conscionability, Nevada law requires a court to look for both procedural and substantive unconscionability. *D.R. Horton,* 96 P.3d at 1162. An arbitration clause is 'procedurally' unconscionable when a party has no "meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract." *Id.* For example, the use of fine print and/or misleading or complicated language that "fails to inform a reasonable person of the contractual language's consequences" indicates procedural unconscionability. *Id.* In contrast, 'substantive' unconscionability is based on the one-sidedness of the arbitration terms. *Id.* at 1162-63. "Generally, in considering substantive unconscionability, courts look for terms that are 'oppressive.'" *Gonski*, 245 P.3d at 1169.

Although a showing of both types of unconscionability is necessary before an arbitration clause will be invalidated, the Nevada Supreme Court has noted that a strong showing of procedural unconscionability means that less substantive unconscionability is

required. *D.R. Horton*, 96 P.3d at 1162. The reverse is also true: the stronger the showing of substantive unconscionability, the less necessary is a strong showing of procedural unconscionability. *Gonski*, 245 P.3d at 1169.

### 1. Procedural Unconscionability

Without citing to any evidence, Plaintiff argues, in a conclusory manner, that the Arbitration Clause is procedurally unconscionable because the contract as a whole is an adhesion contract that was offered on a "take-it-or-leave-it basis." (Resp. 4:26–5:3, ECF No. 8.) Defendant disputes that their agreement was an adhesion contract, contending that their contract was "a bargained-for contract entered into after arms length negotiations." (Reply 9:2–3, ECF No. 11.)  Because there is a dispute over whether this was an adhesion contract and because Plaintiff was the party with the burden of establishing this defense but, yet, has provided no evidence that the contract actually was adhesive, the Court cannot conclude that the instant contract was an adhesion contract, particularly in light of the fact that both parties are commercial entities. *See C.H.I. Inc. v. Marcus Bros. Textile, Inc.*, 930 F.2d 762, 76–64 (9th Cir. 1991) (declining to find that the contract was an adhesion contract where the party provided no evidence that the contract was one of adhesion but merely relied on conclusory arguments).  Further, even if this were an adhesion contract, that does not make the contract-- and, by extension, its provisions--unconscionable *per se*. *Samuel, Son & Co. Inc. v. Sierra Stainless, Inc.*, No. 3:09-cv-00291-RAM, 2010 WL 4237993, at *7 (D. Nev. Oct. 19, 2010).

Plaintiff also argues that the Arbitration Clause is procedurally unconscionable because it fails to indicate that, by agreeing to binding arbitration, Plaintiff was ceding significant rights under Nevada law, specifically the right to a trial by jury. (Resp. 5:4–7, ECF No. 8.) However, a Court in this District has already rejected this argument under similar facts. *See Lyman v. Mor Furniture For Less, Inc.*, No. 3:06-cv-00666-ECR-RAM, 2007 WL 2300683, *3–*4 (D. Nev. Aug. 07, 2007).

In *Lyman*, the arbitration provision--which, like the Clause here, was conspicuous--did not explicitly state that it acted as a jury waiver, but, rather, stated that all disputes related to the plaintiff's employment would be settled by arbitration. *Id.* Judge Reed found that this was sufficient to put the plaintiff on notice that her dispute would be resolved in a forum other than a judicial proceeding, and therefore determined that, in that context, "the failure to advise of waiver of right to jury does not overcome the strong presumption in favor of arbitration." *Id.* In this case, the Clause likewise does not specifically state that the parties are waiving their right to a jury trial, but does specifically state that "all disputes arising under or in any way related to this Agreement . . . shall be resolved exclusively by binding arbitration . . . ." Thus, Plaintiff, similarly to the plaintiff in *Lyman*, was put on notice that its claims related to the contract would be resolved in a forum other than a judicial proceeding, even if the Clause did not explicitly state that it was waiving its right to a jury trial, which is sufficient to preclude a finding of procedural unconscionability.

Finally, Plaintiff argues that the Arbitration Clause is procedurally unconscionable because "it is in fine print and indistinguishable from the many other contractual provisions." (Resp. 5:15–17, ECF No. 8.) However, the Arbitration Clause is in the same-sized font as the rest of the contract, and has an indented and underlined title of "Injunctive Relief; Arbitration" that sets it off from the rest of the contract. Thus, the Court does not find that the Arbitration Clause is procedurally unconscionable on these grounds.

### 2. Substantive Unconscionability

Although, based on its finding that the Arbitration Clause was not procedurally unconscionable, the Court does not need to examine whether the Arbitration Clause is substantively unconscionable, it will do so for the sake of thoroughness.

Plaintiff first argues that the Arbitration Clause is substantively unconscionable because the first sentence of the paragraph under the title "Injunctive Relief; Arbitration" provides:

> Customer agrees that any breach involving CRC's Confidential Information or proprietary rights or the non-solicitation of employees will result in irreparable and continuing damage to CRC, for which there will be no adequate remedy at law, and in the event of such a breach, CRC will be entitled to injunctive relief and/or a decree of specific performance, and other such relief as may be appropriate.

(Resp. 5:27–6:5, ECF No. 8.)  Plaintiff contends that such language indicates that the Arbitration Clause unilaterally favors Defendant and is therefore substantively unconscionable. However, this sentence is part of the injunctive relief clause alluded to in the title of the paragraph, not part of the Arbitration Clause.  Although the arbitrator may well enforce this clause because it is one of the remedies that the parties agreed to in the event of a breach of contract, this sentence is irrelevant to whether the Arbitration Clause itself is unconscionable.

Plaintiff also argues that the Arbitration Clause's failure to disclose the potential costs of the arbitration--including the travel costs--renders the Clause unfairly unilateral and may prevent Plaintiff from effectively vindicating its rights. (Resp. 6:26–7:9, ECF No. 8.) However, Plaintiff--a corporation--provides no actual evidence that the arbitration proceedings might be too expensive for it to afford, nor does it present evidence that Defendant will far more easily be able to bear the financial burden of the arbitration than Plaintiff will.  Further, Plaintiff fails to explain how it was not put on notice of the potential travel costs by the Arbitration Clause, which, on its face, provides that binding arbitration will be held "in Phoenix, Arizona, Maricopa County, United States of America."  Nor has Plaintiff provided evidence that the travel expenses from Las Vegas--for the approximately one-hour flight or six-hour drive--would be unduly burdensome to it.  In other words, the risks of prohibitive costs are "too speculative to justify the invalidation of [the] arbitration agreement." *Green Tree Financial Corp.*, 531 U.S. at 91.  Accordingly, Plaintiff has failed to show that the Arbitration Clause is substantively unconscionable.  The one manner in which the Arbitration Clause is

one-sided--the requirement that the arbitration be held in Arizona--is hardly sufficient to render the Clause "oppressive," particularly in the absence of any evidence other than the fact that Plaintiff is based in Nevada and Defendant is based in Arizona.

Because Plaintiff has failed to show that the Clause was either procedurally or substantively unconscionable, much less both, the Arbitration Clause is enforceable under Nevada Law.

### C. Arizona Law

Under Arizona law--which only Defendant asks the Court to apply--"[a]rbitration is a creature of contract law," *Schoneberger v. Oelze*, 96 P.3d 1078, 1082 (Ariz. Ct. App. 2004), and "the enforceability of [an] agreement to arbitrate is determined by principles of general contract law," *Broemmer v. Abortion Services of Phoenix, Ltd.*, 840 P.2d 1013, 1015 (Ariz. 1992); *see* Ariz. Rev. Stat. Ann. § 12-1501.  In Arizona, a court may refuse to enforce contracts or clauses of contracts that were unconscionable when made. *See* Ariz. Rev. Stat. Ann. § 47-2302.  A claim of unconscionability can be established by a showing of substantive unconscionability alone, though the Arizona Supreme Court has noted that "[i]f only procedural irregularities are present, it may be more appropriate to analyze claims under the doctrines of fraud, misrepresentation, duress, and mistake, although such irregularities can make a case of procedural unconscionability." *Maxwell v. Fidelity Financial Services, Inc.*, 907 P.2d 51, 59 (Ariz. 1995).  It is the burden of the party challenging an arbitration clause to show that it is unconscionable. *See Jones v. General Motors Corp.*, 640 F. Supp. 2d. 1124, 1133–34 (D. Ariz. 2009).

As the Court has already noted, Plaintiff failed to provide any evidence that the agreement was unconscionable because it was an adhesion contract, the terms were written in a small font, or because the terms of the Clause were inequitably skewed in favor of Defendant. Therefore, Plaintiff cannot meet its burden of demonstrating unconscionability

1 pursuant to those theories under Arizona law, either.  The Court need only examine whether
2 the omission of an explicit waiver of jury rights rendered the Clause fatally unconscionable
3 under Arizona law.

4    The Court has been unable to find an Arizona case in which the omission of an explicit
5 waiver of jury rights was analyzed under the lens of procedural unconscionability--and the
6 parties have not cited to one.  However, an Arizona appellate court analyzed such facts under a
7 similar lens.  In *Harrington v. Pulte Home Corp.*, 119 P.3d 1044, 1052 (Ariz. App. Ct. 2005),
8 the party seeking to avoid arbitration argued that an arbitration clause was unenforceable under
9 the "reasonable-expectations doctrine" because it did not include an explicit waiver of jury
10 rights, though that would be its functional effect.  In rejecting the party's argument, the court
11 observed that "to predicate the legality of a consensual arbitration agreement upon the parties'
12 express waiver of a jury trial would be as artificial as it would be disastrous." *Id.*  In
13 *Harrington*, the Arizona appellate court cited to the *Snowden* case which noted: "The loss of
14 the right to a jury trial is a necessary and fairly obvious consequence of an agreement to
15 arbitrate," *Snowden v. Checkpoint Check Cashing*, 290 F.3d 631, 637 (4th Cir. 2002).  This is
16 in accord with Judge Reed's analysis in *Lyman, supra*.  Accordingly, this Court cannot find
17 that the Arbitration Clause was unconscionable simply because it did not contain an explicit
18 waiver of jury rights.

19    It is also worth noting that Plaintiff's Response essentially concedes that the Arbitration
20 Clause was not substantively unconscionable according to Arizona law.  Whereas substantive
21 unconscionability is present where the contract terms are "so one-sided as to oppress or
22 unfairly surprise an innocent party" or where there is "an overall imbalance in the obligations
23 and rights imposed by the bargain," *Maxwell*, 907 P.2d at 58, Plaintiff admits that "the one-
24 sidedness of the Arbitration Clause is not overwhelming," (Resp. 6:16, ECF No. 8).  Under
25 such circumstances, the Court cannot find that the Clause was unconscionable under Arizona

law.

### D. Motion to Dismiss

Having concluded that Plaintiff has not met its burden of demonstrating that the Arbitration Clause is unenforceable, the Court must now decide whether to dismiss this action or stay it for the pendency of the arbitration. Failure to exhaust non-judicial remedies, such as the failure to arbitrate under an arbitration clause, is a proper, though "non-enumerated," reason for granting a Rule 12(b) motion to dismiss. *See Inlandboatmens Union of Pacific v. Dutra Group*, 279 F.3d 1075, 1078 n.2, 1083–84 (9th Cir. 2002). Therefore, because Plaintiff has failed to exhaust arbitration here, dismissal without prejudice is appropriate.

### CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration (ECF No. 6) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss (ECF No. 10) this action is **GRANTED, without prejudice**.

DATED this 23rd day of March, 2011.

_____
Gloria M. Navarro
United States District Judge